KAYATTA, Circuit Judge.
Luis Yoel Díaz-Rosado (“Díaz”) was convicted of carjacking under 18 U.S.C. § 2119. On appeal, he challenges the sufficiency of the evidence on the issue of intent, the admission of an alleged confession, the rejection of a proposed supplemental jury instruction, and the admission of an in-court witness identification. For the following reasons, we affirm.
I. Background
Although we recite the facts relevant to Diaz’s sufficiency challenge in the light most favorable to the prosecution, we “provide a more or less neutral summary” of the facts relevant to Diaz’s remaining claims, and reserve further exposition of those facts for our analysis of the claims themselves. See United States v. Flores-Rivera, 787 F.3d 1, 9 (1st Cir. 2015).
On March 8, 2013, Margarita Irizarry-Ramirez (“Irizarry”) picked up her four-year-old granddaughter from elementary school in Hato Rey, Puerto Rico. As Irizar- *118 ry attempted to buckle the child into a car seat, she sensed the presence of somebody approaching from behind. When she turned around, she found herself facing a man standing approximately five feet, six inches tall, and wearing a dark-colored baseball cap, sunglasses, and a dark-colored shirt.
The man attempted to wrest Irizarry’s car key from her. In the ensuing struggle, which we describe in greater detail below, the man seized the key to the car. As this altercation was taking place, Ronald Vázquez-Rosado (“Vázquez”)—a parent at the school—tried to assist Irizarry by attempting to remove her granddaughter from the car. Unable to do so, Vázquez urged Irizarry to remove her granddaughter herself while he tried to restrain the man, who had by that point entered the driver’s seat of the vehicle. Irizarry succeeded, Vázquez got out of the car, and the man drove away.
Vázquez, a former undercover police officer for the Puerto Rico Police Department (“P.R.P.D.”), subsequently gave chase in his own vehicle and called 911. While on the telephone with the 911 operator and a police officer, Vázquez spotted Irizarry’s vehicle being driven by a man with short black hair. Vázquez relayed this information to the operator and the officer. Noticing that Irizarry’s car had suddenly stopped, and fearful that the man might try to engage him, Vázquez drove off and returned to the school.
A short time later, P.R.P.D. Agent William Méndez-Guzmán (“Agent Méndez”) and his patrol partner spotted the stolen vehicle. After a brief chase by car and on foot, Agent Méndez apprehended the driver of the car, whom he later identified as Diaz. Though Irizarry had initially provided the police with a description of the man who had taken her car, she was unable to identify Diaz in a lineup conducted several hours later. Vázquez was similarly unable to identify Diaz in a photo array conducted a few days later.
Agent Méndez testified that after arresting Diaz, he read Diaz his Miranda rights and took him to the local precinct. Agent Méndez further testified that once they were at the police station, he again advised Diaz of his Miranda rights—both verbally and in writing—and after Diaz acknowledged by signature his receipt of a written copy of those rights, Diaz told him that “he wanted to testify something, to state something.” Agent Méndez testified that he “told [Diaz] that if he had anything that he wanted to say ... he should write it out on the reverse side of the [Miranda form],” and that Diaz subsequently wrote and signed a statement that (the defendant stipulated) translates to English as follows:
I, Luis Yoel Diaz Rosado, belatedly repent the acts I committed against the lady and someone known to me who got into a mess that he did not commit. Sorry.
Thoughtfully,
Luis Yoel Diaz Rosado
I took the car keys from the lady under the influence of substances, may God bless her. And I remember that the police hit the siren.
Thoughtfully,
Luis Yoel Diaz Rosado
Later that night, P.R.P.D. Agent Angel Fernández-Ortega (“Agent Fernández”) presented the case to Puerto Rico District Attorney Francelis.Ortiz-Pagán (“D.A. Ortiz”). D.A. Ortiz declined to press charges under the Commonwealth’s carjacking statute, due to concerns that Diaz’s confession was not “conscious and intelligent” under Pueblo v. Millán Pacheco, 182 D.P.R. 595 (2011). Federal prosecutors subsequently charged Diaz with one count of carjacking under 18 U.S.C. § 2119, and *119 a grand jury returned an indictment on this charge on March 21, 2013.
Prior to trial, Diaz filed a motion in limine to suppress his 'written confession, arguing that the confession was provided “under the effects of controlled substances” and thus was not voluntary. In the ensuing hearing, D.A. Ortiz testified that Agent Fernández had informed her that Diaz had appeared to be under the influence of drugs during the lineup, which, again, had taken place several hours after Diaz’s arrest. However, Agent Fernandez denied not only making this statement but also having the impression that Diaz was on drugs. Agent Méndez and another one of the arresting officers— P.R.P.D. Agent Heriberto Soto-Cruz (“Agent Soto”)—similarly testified that Diaz did not appear to be under the influence of controlled substances, and Irizarry testified that she did not notice any of the lineup participants “acting in a weird way physically in any way.” Though the court “f[ou]nd [D.A. Ortiz] credible,” it also determined that “the witnesses are pretty consistent in that this gentleman was not behaving strangely.” The district court then denied Diaz’s motion.
Part way through the subsequent trial, Diaz renewed his motion to suppress his alleged confession on the basis of videos filmed by his brother at the precinct house several hours after Diaz had been brought there. In those videos, an unidentified male voice can be heard saying that “it looks like ... when [Diaz] came in, he came in too ... way too you-know-what on drugs,” and further, that “[Diaz] said ... that he had taken some pills.” Diaz’s brother testified that that voice belonged to a police officer who was staffing the precinct’s reception desk. The brother also testified that Diaz “had a psychiatric history” as well as “drug problems,” and that when he saw Diaz in the station, “[Diaz] was raising his voice, he was babbling, and his hands were on the cell bars and he had an erratic behavior.” Nevertheless, the district court denied Diaz’s renewed motion to suppress, on the ground that the videos failed to show that Diaz was “actually being coerced.”
During trial, the government called Vázquez to testify. In the course of cross-examination, Diaz’s attorney engaged in the following exchange with Vázquez:
Q: And the person was not in that photo; you were not able to identify any person in that photo spread as the person whom you had intervened with.
A: At that moment I was not convinced of the identification of any person, but at this moment I am convinced of the identification of the person.
Q: You are? Please tell me. Please tell me.
A: What do you want me to tell you?
Q: You said that you were now. Please tell me.
A: Yes, I am convinced that I can point out who is the person who carried out the carjacking.
Q: Who did?
A: The man who is seated over there behind the monitor.
The judge then clarified that Vázquez was referring to Diaz. Diaz’s attorney did not ask the court to strike Vázquez’s testimony.
On January 31, 2014, after twice denying Diaz’s motions for acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the court instructed the jury as follows:
We’re almost done. Now let me give you an instruction about statements made by Mr. Diaz-Rosado. And you heard evidence in this case that Luis Yoel Diaz-Rosado made a statement in which the government claims to you that he admit *120 ted certain facts. It is for you to decide whether Luis Yoel Diaz-Rosado indeed made that statement, based on the evidence presented here, and, if so, how much weight you give to it. In making these decisions, you should consider all of the elements about the statement including the circumstances under which the statement may have been made and any facts or circumstances tending to corroborate or contradict the version of events described in the statement.
During the course of its deliberations, the jury sent the following note to the district court judge:
Pueblo Y Millán Pacheco [sic] law that confección [sic] need to be concious [sic] and intelligent ... aply’s [sic] to the federal courts? Or the confección [sic] is acceptable no matter in what condition.
Diaz’s attorney asked the judge to respond by telling the jury that “the Court has admitted the confession,” and “it’s up to you, the jury, to decide how much or how little you’re going to believe it.” Diaz’s attorney contended that “telling [the jurors they] don’t have to concern [themselves] with [Millán] would be ... a misstatement of the law,” insofar as “[b]oth [Millán] and federal case law state that a confession has to be given in a freely, voluntary manner.”
The judge opted to state the following:
Now, you need not concern yourselves— the [Millán] holding. [D.A. Ortiz] mentioned it, I did not allow her to go into details. That is a case from the Puerto Rico Supreme Court. Now, you need not concern yourselves with that case. In this particular case, I, as the judge in the case, allowed the confession in this case to be presented into evidence, and you have the confession before you. So, I will give you the instruction I gave you on how to consider that confession as evidence in this case just like any other evidence. And I will read it to you.
After repeating his prior instruction, the judge told the jury:
So, as I stated, I have allowed the confession—I admitted the confession into evidence. So, it is before you to consider. Before the jury could be excused, how-
ever, Diaz’s attorney approached the bench and again “propose[d] that [the judge] advise the jury that the confession has to be given in a free and voluntary manner” and that “like any other piece of evidence they are free to accept it in its totality, accept it partially or not to accept it at all.” The judge once more declined to provide the additional instruction:
I allowed the evidence that the suppression was given, you’ve made your arguments; and they can—you know, either they find it’s true or it’s a whole lie, and that’s the argument [that] you made before the jury. But I made the determination in the suppression conference.
The judge then excused the jury.
Shortly thereafter, the jury convicted Diaz of one count of carjacking under 18 U.S.C. § 2119. Diaz was subsequently sentenced to seventy-one months of imprisonment.
II. Discussion
A. Sufficiency of the Evidence
We review preserved challenges to the sufficiency of the evidence de novo. United States v. Pena, 586 F.3d 105, 111 (1st Cir. 2009). However, in so doing, “we examine the evidence, both direct and circumstantial, in the light most favorable to the prosecution and decide whether that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged count or crime.” United States v. *121 Cruz-Díaz, 550 F.3d 169, 172 n.3 (1st Cir. 2008).
Diaz’s sufficiency challenge focuses solely on the element of intent required for a carjacking conviction under § 2119, and so we do as well. The statute imposes liability upon any individual who, “with the intent to cause death or serious bodily harm[,] takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation.” 18 U.S.C. § 2119. Diaz argues that because he did not wield a weapon, make any “threatening gestures or verbal threats,” or otherwise manifest an intent to kill or cause serious bodily harm, the evidence is insufficient to sustain a conviction under the statute.
“The intent requirement of § 2119 is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver’s automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car).” Holloway v. United States, 526 U.S. 1, 12, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999). Thus, the conditional intent to cause serious harm or death can satisfy § 2119. Id. at 8, 119 S.Ct. 966.
In our prior opinions deeming the evidence sufficient to support a finding of intent to seriously harm another if necessary, the defendants have, as Diaz notes, possessed items traditionally viewed as weapons, such as guns. See, e.g., United States v. Melendez-Rivas, 566 F.3d 41, 45 (1st Cir. 2009); United States v. Garcia-Álvarez, 541 F.3d 8, 16 (1st Cir. 2008); United States v. Lebrón-Cepeda, 324 F.3d 52, 57 (1st Cir. 2003) (per curiam). Nothing in the statutory language, though, requires the presence of such an item. Nor does common sense. Just as one can use brute force or a variety of items to kill or cause serious harm, one can also use such force or items to manifest an intent to cause death or serious harm if necessary. See United States v. Hayworth, No. 16-5358, — Fed.Appx. -, -, 2017 WL 927782, at *3 (6th Cir. Mar. 8, 2017) (unpublished opinion) (first citing United States v. Fekete, 535 F.3d 471, 480 (6th Cir. 2008); then citing United States v. Edmond, 815 F.3d 1032, 1040 (6th Cir. 2016), vacated and remanded on other grounds sub nom. Harper v. United States, — U.S.-, 137 S.Ct. 1577, 197 L.Ed.2d 698, 2017 WL 1366702 (2017) (mem.)) (finding the evidence sufficient to sustain a § 2119 conviction where the defendant “wrestled with” and “jabbed” a fallen woman who was nine months pregnant).
Here, it is undisputed that Diaz used both physical force and the car itself to effect the heist. So the question is: were Diaz’s actions sufficient to support a finding that Diaz actually intended to cause serious harm if that were necessary to steal the car? While the case is close, we think that the evidence is indeed sufficient when viewed, as it must be, in the light most favorable to the verdict.
We have at the outset a grandmother and her grandchild, with the latter sitting in a car seat inside a vehicle parked near an elementary school. A jury could certainly find that the grandmother would not have surrendered the vehicle with the child inside of it without offering maximum resistance. And Diaz showed from the get-go that he was nevertheless prepared to overcome such resistance. He “grab[bed]” Irizarry’s hand, “struggled] with [her],” and “push[ed] and shov[ed]” her. Eventually, according to Irizarry’s testimony, Díaz “thr[e]w [her] onto the cement sidewalk,” at which point he was able to wrest *122 loose her car key from her keychain.[1] Iri-zarry’s testimony is supported by that of Vázquez, who stated that he observed Diaz “struggling with [Irizarry], managing] to overcome her and ... throw[ ] her, ... [and] slam[ ] her onto the floor.” The record also shows that Diaz put Irizarry’s vehicle into gear and began to move it while she was attempting to extricate the child from the car seat and Vázquez was “struggl[ing]” with Diaz in the front seat.
Viewed in combination and in the light most favorable to the verdict, these facts are sufficient to allow a rational jury to conclude beyond a reasonable doubt that Diaz was willing to cause serious bodily harm in order to abscond with Irizarry’s car. We have previously indicated that the fact that a defendant “used violence from the very beginning of the incident ... suggestfs] a willingness to harm the victim” within the meaning of § 2119. United States v. Rodríguez-Adorno, 695 F.3d 32, 42 (1st Cir. 2012). Here, Diaz not only used violence from the outset, but he also initiated the heist in circumstances where it was virtually certain that violence would be necessary. Crucially, at each juncture of the incident, Diaz did in fact employ whatever force was necessary to accomplish his aim. The force progressed from pushing and pulling, to a body slam, to intentionally moving the vehicle in a manner that, as the culminating act in an effort to separate a desperately resistant grandmother from the car containing her grandchild, could rationally be seen as manifesting an intent to cause serious injury if doing so were necessary to take the car. Because this “plausible rendition of the record” provides adequate support for the jury’s verdict, United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992), we conclude that the government presented sufficient evidence to sustain Diaz’s conviction under § 2119.
B. Written Confession
Diaz next argues that the district court erred by admitting his confession, because the government failed to carry its burden of proving the voluntariness of that confession. He contends that because “he was under [Agent] Méndez’s total and exclusive custody and control” when he provided the statement, “the government’s inability to offer any credible affirmative evidence”— aside from Diaz’s signed Miranda form and Agent Méndez’s testimony—“warrants an inference that the alleged confession was involuntary.”
The problem for Diaz is that the record amply supports the conclusion that his confession did not result from police interrogation or coercion. If an individual simply walks into a police station and announces that he just robbed a bank, the Constitution does not per se bar the government from using that announcement against the person. Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The same is true even if the individual is in police custody when he makes such an announcement, so long as the police do not interrogate the individual, i.e., engage in “[a] practice that the police should know is reasonably likely to evoke an incriminating response,” Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), or otherwise engage in “coercive police activity,” Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).
Here, Officer Méndez testified that immediately after he booked Diaz at the police station and administered verbal and *123 written Miranda warnings—the latter of which Diaz signed—Diaz told him of his own volition that “he wanted to testify something, to state something.” Diaz does not parry this testimony with any claim that Agent Méndez coerced or improperly elicited his confession. Rather, he contends that his confession was not “voluntary” in the sense that his decision to speak was the result of a drug-addled state.
The flaw in this argument is that in this context, a finding that a confession is not “voluntary” requires a finding of coercive police activity, even if only in the form of a custodial interrogation. Id.; see also United States v. Palmer, 208 F.3d 55, 61-62 (1st Cir. 2000). Here, there is no evidence of such activity, and so the district court did not err in finding the confession admissible.
Taking a slightly different tack, Diaz points to the general principle that waivers of important rights need be “knowing, intelligent, and voluntary.” See, e.g., United States v. Melendez-Santiago, 644 F.3d 54, 59 (1st Cir. 2011) (quoting Maryland v. Shatzer, 559 U.S. 98, 104, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010)); see also Miranda, 384 U.S. at 479, 86 S.Ct. 1602. Here, though, there was no waiver of any such right. The only relevant right was the Fifth Amendment right not to be compelled to speak, and its prophylactic corollary to receive a Miranda warning before being subjected to custodial interrogation. Diaz makes no claim that he was interrogated while in custody, nor does he claim that he was otherwise coerced. And though the Fifth Amendment confers the “right to remain silent,” Miranda, 384 U.S. at 479, 86 S.Ct. 1602, that right simply means the right not to be compelled by the government into offering evidence against oneself, see id. at 478, 86 S.Ct. 1602. Absent any evidence of such compulsion here, and given Officer Méndez’s unrebutted testimony regarding the lack of coercion, there was no need for the district court to find any waiver, knowing or otherwise.[2]
This is not to say that evidence of Diaz’s mental state is irrelevant to his guilt or innocence. The jury could well have considered his alleged impairment as reason to give the confession little or no weight. See United States v. Feliz, 794 F.3d 123, 130-31 (1st Cir. 2015). Diaz cites no authority, though, for the mandatory exclusion of a volunteered confession solely because the confessor was under the influence of a controlled substance at the time of the confession.
We reject, too, Diaz’s complaint that the district court never expressly stated that the confession was voluntary. As we have explained, the only relevant issue of volun-tariness was whether the confession was coerced by police misconduct. The court’s express and supported finding that the confession was not coerced served as a sufficient proxy for a finding of relevant voluntariness. See id. at 131 (citing Sims v. Georgia, 385 U.S. 538, 544, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967)) (finding that the district court’s “conclu[sion] that the confessions were not coerced ... was enough to provide a sufficiently clear ruling” on the *124 matter of voluntariness).[3]
We also see no basis for concluding that the district court delegated to the jury the “purely legal question” of voluntariness. See id. at 130. To the contrary, the district court quite properly and expressly left to the jury only the question of how much weight to give the confession, leaving Diaz able to argue that it was the product of his intoxicated condition and thus not credible. This allocation of factfinding responsibility was precisely what precedent calls for. See kL at 130-31.
C. Jury Instruction
Diaz next contends that the district court abused its discretion in responding to the jury’s question about the confession. He argues in his brief that “[t]he emphasis placed on the judge’s admission of the alleged confession could be read to instruct the jury that they must consider the confession, allowing it discretion only as to whether it would be ... given a great deal of weight or less weight, but not that it was free to disregard the alleged confession.” He further contends that “[t]he clarifying instruction requested by the defense—you as the jury are entitled to accept the confession or to disregard it based on the circumstances surrounding the written statement—would have gone a long way to correcting this impression.”
“In determining whether a district court’s refusal to give a jury instruction is reversible error, ‘we look to see whether the requested instruction was (1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case.’ ” United States v. Berríos-Bonilla, 822 F.3d 25, 32 (1st Cir.), cert. denied, — U.S.-, 137 S.Ct. 206, 196 L.Ed.2d 159 (2016).
Even granting Diaz the argument that his requested instruction was correct as a matter of substantive law,[4] we agree with the government that the instruction was substantially incorporated into the charge as rendered.[5] Diaz did not ask that the trial judge not tell the jury that he had determined the confession to be admissible. The only relevant difference between Diaz’s requested instruction and the district court’s given instruction is that Diaz wanted the jurors told expressly that, in deciding how much weight to give the confession, they could opt for no weight at all. We think that such a possibility was manifest in the instruction that the court reread to the jurors telling them that they were to decide how much weight to give a confession based, among other things, on all of the circumstances in which it was given. The court’s reminder that the jurors should treat the evidence like all other evidence—which they must have known they could disregard if they thought the confession warranted no weight[6]—reinforced this manifest possibility. Accordingly, the district court did not abuse its discretion by choosing to repeat its prior *125 instruction rather than using the precise language proposed by Diaz.
D. In-Court Identification
Finally, Diaz’s challenge to "Vazquez's in-court identification of Diaz is hobbled by his lack of objection at trial and, in any event, defeated by his express solicitation of the now-challenged testimony. In fact, the record shows that Vázquez initially manifested reluctance to actually name Diaz, and did so only after Diaz’s counsel’s repeated requests that Vázquez “[pjlease tell [him]” who took Irizarry’s car. On this record, Diaz cannot argue that the district court should have stricken Vázquez’s testimony, much less that it was plain error for the court not to do so sua sponte. See United States v. Cruz-Feliciano, 786 F.3d 78, 89 (1st Cir. 2015) (“[A] defendant cannot complain about the admission of testimony directly responsive to a question posed by defense counsel.”).
III. Conclusion
For the foregoing reasons, we affirm.

. As a result of the altercation, Irizarry suffered scratches, cuts, and a hematoma on her left knee.

. We reject Diaz’s argument that the district court committed error in its assignment of the burden of persuasion on the question of vol-untariness. Either Diaz waived this argument by agreeing during the suppression hearing to assume whatever burden the district court placed on him, or he failed to object to that burden, thereby circumscribing our review to plain error. See United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002). And even if we were to assume arguendo that the district court mixed up the burdens, our earlier determination that the confession was voluntary precludes us from finding plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

. We therefore need not decide whether a failure by the district court to make an ultimate finding of voluntariness could be prejudicial error where on de novo review we find the confession to have been voluntary.

. The government argues otherwise. In its view, Diaz’s proposed instruction urges the jury to "make another independent finding on the issue of voluntariness.”

. Diaz concedes that the prior jury instruction was "adequate.”

. Notably, the court had earlier instructed the jurors that they "may believe everything a witness says or ... part of what a witness says or ... zero, nothing of what a witness says.”