# United States Court of Appeals
## For the First Circuit

No. 18-1561

UNITED STATES,

Appellee,

v.

WILLIAM POTHIER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Kayatta, Circuit Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

S. Amy Spencer, with whom William E. Christie and Shaheen & Gordon, P.A. were on brief, for appellant.
Seth R. Aframe, Assisted United States Attorney, with whom Scott W. Murray, United States Attorney, and Cam T. Le, Assistant United States Attorney, were on brief, for appellee.

March 26, 2019

_____

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**KAYATTA**, **Circuit Judge**.  Police learned that someone using an IP address[1] registered to William Pothier at an apartment in Exeter, New Hampshire, downloaded child pornography from a peer-to-peer file-sharing network.  They also learned that two people in addition to Pothier received mail at that residence.  While executing a search warrant, police found in the living room a laptop computer that was not password-protected.  Pothier admitted that he owned the laptop, which contained a handful of documents and innocuous chat histories in his name.  It also contained child pornography, i.e., videos of "minor[s] engaging in sexually explicit conduct."  18 U.S.C.A. § 2252(a)(4)(B)(i).  That was more or less enough for the police and the United States Attorney.  In short order, a grand jury indicted Pothier for "knowingly possess[ing]" child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), and then a jury found him guilty.  He now appeals, claiming that the evidence was insufficient to prove beyond a reasonable doubt that he -- as opposed to the other people who may have had access to the computer -- downloaded the pornography.  For the following reasons, we agree and reverse the conviction.

---

[1] "An IP address, or Internet Protocol address, 'is the unique address assigned to every machine on the internet.'"  United States v. McLellan, 792 F.3d 200, 204 n.1 (1st Cir. 2015) (quoting United States v. Cameron, 699 F.3d 621, 627 n.1 (1st Cir. 2012)).

A preliminary investigation revealed that the U.S. Postal Service delivered mail to three people at the Exeter residence associated with the IP address registered to Pothier: Pothier, Josephine Pritchard, and someone named Balis. On March 30, 2016, police officers executed a warrant to search for child pornography at the residence. For approximately fifteen minutes, police officers repeatedly knocked on the door, and called and texted Pothier's cell phone. Though Pothier was inside the residence, he did not answer until the fire department arrived and began to pry open the door. When asked if he had heard the police outside, he answered that he had, and said that neighbors had told him that police had been canvassing the area.

The ensuing search surfaced numerous computers and electronic storage devices, including an Asus laptop found in the living room. Pothier admitted that he owned the laptop, which was not password-protected and had a generic "Asus" profile rather than a user-generated profile. The police were therefore able to access the computer's contents on-site. Among the applications on the Asus laptop were a file-sharing program called Shareaza and an electronic file-shredding program called Evidence Eliminator. Also on the computer were six videos depicting children engaging in sexual acts. In addition, the on-site review revealed that a

Skype user called "wdpothier" had engaged in a few innocuous Skype chat exchanges in March 2016.

The police later conducted a full forensic investigation of the Asus laptop. The child pornography discussed above was saved in a temporary folder associated with the Shareaza application. In addition, one more video depicting child pornography was in the laptop's recycle bin. Police also found that a user had searched on both Google and Shareaza using terms consistent with child pornography. Finally, police found thumbnail images that were remnants of child pornography that had been downloaded and deleted.

The computer contained a handful of documents associated with two people. First, police found two mortgage interest statements and a restaurant voucher, all associated with Pothier. Second, they found personnel and military discharge documents belonging to Joseph Walko. Walko testified that he worked at the Federal Aviation Administration in New York with Pothier and that, at some point, they had neighboring cubicles, but that he had no idea why his personal documents were on Pothier's computer. So, the jurors had a basis to conclude that Walko did not have access to the laptop, notwithstanding the presence of his documents on it.

The government was able to pin down the exact times and dates of the illicit downloads and searches. There was no overlap

between the dates on which Pothier was known to have used the laptop, the dates on which Walko's documents were saved to the computer, and the dates of the illicit downloads and searches.

At the close of the government's case, Pothier moved pursuant to Federal Rule of Criminal Procedure 29 for judgment of acquittal, arguing that the government failed to prove beyond a reasonable doubt that he knew that the Asus laptop contained child pornography. The district court summarily denied the motion. Pothier neither testified nor presented any evidence in his defense, and the jury returned a guilty verdict. The district court then denied Pothier's motion to set aside the verdict, stating without explanation that a rational jury could find Pothier guilty beyond a reasonable doubt. At sentencing, the district court applied -- over Pothier's objection -- a two-level Guidelines enhancement for "knowingly engag[ing] in distribution" of child pornography. See U.S.S.G. § 2G2.2(b)(3)(F). The court sentenced Pothier to six years of imprisonment and twenty years of supervised release.

Pothier appeals to this court. He challenges both the sufficiency of the evidence underlying the guilty verdict and the district court's application of the sentencing enhancement for knowing distribution of child pornography.

We turn first to Pothier's claim that the district court erred in denying his motion for judgment of acquittal. It goes without saying that the "Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979). We give great deference to juries' application of this standard. In reviewing Pothier's claim, we must affirm the conviction if after a de novo review of the evidence, taken in the light most favorable to the government, we conclude that a rational factfinder could decide that the government carried its burden beyond a reasonable doubt. See United States v. Figueroa-Lugo, 793 F.3d 179, 183 (1st Cir. 2015). "In conducting a sufficiency analysis, however, some degree of intellectual rigor is required; a reviewing court should not give credence to 'evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative.'" Leftwich v. Maloney, 532 F.3d 20, 23 (1st Cir. 2008) (quoting United States v. Spinney, 65 F.3d 231, 234 (1st Cir. 1995)); see also United States v. Valerio, 48 F.3d 58, 64 (1st Cir. 1995) ("[W]e are loath to stack inference upon inference in order to uphold the jury's verdict.").

**A.**

The record in this case begins like the first chapter of a detective novel. The criminal act was clear: The laptop

contained child pornography.  Because the laptop was not password-protected and was found in a common area of the residence, the possible suspects were three:  Pothier, Pritchard, and Balis, all of whom apparently had access to the residence and, therefore, to the computer.  At that point, the record becomes sketchy and the evidence sparse.  We learn very little about the possible suspects and just a bit more about the computer.

The sole fact that the record reveals about Balis is that he or she received mail at the residence.  We have no clue whether Balis lived there, how much time Balis spent there, or whether Balis was there when the pornography was downloaded.  We know nothing about Balis's relationships with Pritchard or Pothier.  The detective who oversaw the investigation testified that neither he nor his subordinates ever attempted to learn more about Balis.  As a result, we do not even know Balis's first name.

The trial record discloses only slightly more about Pritchard.  One officer testified that he believed she was Pothier's "significant other."  She was an airline flight attendant, and she bought the Exeter residence from Pothier.  She showed up at the residence while the police were executing the warrant, and she followed Pothier's advice not to speak to the police without a lawyer present.  Like Balis, she did not testify.

Even the evidence about Pothier is remarkably scant.  We know that Pothier worked for the Federal Aviation Administration

and that he spent at least four days a month in New York, where he maintained an apartment. He also owned property in Newmarket, New Hampshire, and his vehicle was registered there. He received "some" but "not a lot" of mail at the Exeter residence, and the mail he did receive there would sometimes sit in the mailbox for several days. We don't know whether he left the laptop at the Exeter residence when he was elsewhere. Although the government knew the dates and times on which the culprit downloaded the pornography, it did not investigate -- much less prove -- where Pothier was on those days or at those times.

Then there is the Asus laptop that belonged to Pothier. By not establishing a password, Pothier left the contents of the laptop fully accessible to anyone who might turn it on. He also left the laptop physically accessible, sitting in the living room where the police found it. It is undisputed that Pothier used the computer on at least a handful of occasions. There is no proof that anyone else either did or did not use the computer. Importantly, the evidence does not reveal whether an innocent user of the computer would have been aware that it contained child pornography. The seven illegal videos contained on the computer at the time of the search were not filed in conspicuous locations, but rather in the recycle bin and in a temporary folder only visible to a user who overrode Microsoft's default setting.

**B.**

There is no dispute that the jurors could rationally conclude that anyone viewing the videos would know that they depicted child pornography. The question at hand is whether a rational jury could find beyond a reasonable doubt that Pothier knew that his laptop contained the videos. The government's sole theory at trial and on appeal is that Pothier must have known that the illicit material was on his laptop because he was the only person who otherwise used the laptop, and therefore must have been the person who downloaded the pornography. In assessing the extent to which the evidence supports this argument, we begin by spelling out the scenario the government's theory necessarily posits: Pothier downloaded the file-sharing program Shareaza, the file-shredding program Evidence Eliminator, and child pornography, but decided to forgo password protection and then left the laptop in the living room of a residence at which two other people received mail. Furthermore, during the fifteen or so minutes when he knew the police were at the door, Pothier did not conceal or destroy the laptop or run the file-shredding Evidence Eliminator program that the government presumes he had installed.

A contrary scenario consistent with the limited evidence is that Pritchard or Balis used the readily available laptop during Pothier's frequent absences to download the file-sharing and file-shredding applications and the child pornography. Neither of them

could have put a password on the computer without alerting Pothier. And because they were not present when the police came calling, neither of them could have hidden or destroyed the computer, or erased the child pornography, when the need to do so arose.

How could jurors rationally decide beyond a reasonable doubt which scenario describes what happened?  In many cases, jurors rely on their assessments of witnesses' credibility to select between views of the evidence.  Here, though, each competing scenario presumes the accuracy of the testimony proffered by the government, so credibility determinations cannot explain the conviction.  Each scenario is plausible, and though one might debate their relative merits, to settle on one beyond reasonable doubt would require guesswork.  And "[g]uilt beyond a reasonable doubt cannot be premised on pure conjecture."  See Stewart v. Coalter, 48 F.3d 610, 615 (1st Cir. 1995).

Trying to mine the record for some additional inculpatory inferences, the government contends that, in addition to the evidence described above, Pothier's actions at the search scene demonstrated consciousness of guilt.  More particularly, the government argues that Pothier's lengthy delay in responding to the police reveals that he had "something to hide."  In other contexts, similar conduct might carry some probative weight.  Here, though, given that Pothier apparently did nothing in the available fifteen minutes to hide the laptop or shred the evidence, his

conduct as a whole just as easily suggests obliviousness to the content on his computer as it does a guilty conscience. At best, any evidence of consciousness that one can infer from Pothier's reaction to the police is entirely ambiguous.

The government also points out that Pothier advised Pritchard not to talk to the police without a lawyer present. But he had just seen a warrant with Pritchard's name on it. Was he conscious of her guilt? Of Balis's? Was he just giving sound legal advice that one could glean any evening from watching network television? Perhaps not, but we would be guessing.

We acknowledge that Pothier could have filled many of these evidentiary gaps, and that his decision neither to testify nor to present any evidence likely struck the jury as suspicious. But the government bore both the burden of persuasion and the burden of production for the knowledge element of the crime. See Jackson, 443 U.S. at 316 ("[N]o person shall be made to suffer the onus of a criminal conviction except upon sufficient proof -- defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."); Sandstrom v. Montana, 442 U.S. 510, 516 n.5 (1979) (explaining that a directed verdict for the defense results from the government's failure to meet the production burden); see also U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."). So, while

the absence of defense evidence might explain the jury's verdict, it cannot justify the verdict in the face of an insufficiently supported government case.

The Sixth Circuit encountered a remarkably similar case involving three potential suspects with access to a computer that was unprotected by password. United States v. Lowe, 795 F.3d 519 (6th Cir. 2015). As here, the defendant owned the laptop and kept it in a shared area of the home. Id. at 523. There as here, the illicit files were saved in locations where innocent computer users might not have encountered them. Id. at 524. And there as here, the pattern of internet activity on the dates in question did not narrow the field of possible users. Id. at 523. The Sixth Circuit concluded that "without improperly stacking inferences, no juror could infer from such limited evidence of ownership and use that [the laptop owner] knowingly downloaded, possessed, and distributed the child pornography found on the laptop." Id. at 523; see also United States v. Moreland, 665 F.3d 137, 150 (5th Cir. 2011) (holding that the government presented insufficient evidence of knowledge of possession of child pornography where the computer was shared and the images were saved in unallocated "slack space" as opposed to folders associated with a particular user).

The government attempts to distinguish both Lowe and Moreland. It points first to Pothier's behavior when the police came knocking. We have already explained why that conduct, viewed

in context, renders speculative any inference that Pothier manifested consciousness of guilt of the relevant charges.

The government also points out that there exists no evidence that anyone besides Pothier actually used the laptop. In Lowe as well, though, there was no proof that the other possible users did in fact use the laptop. 795 F.3d at 523. We also do not see the logic in the government's unstated assumption that if Pritchard or Balis used Pothier's laptop to download the child pornography, he or she would also likely have used the laptop for other purposes. One might just as easily presume that they would avoid other uses so as not to alert Pothier. All in all, just like the Sixth Circuit in Lowe, we are left with a surprisingly incomplete record. It generates hunches, but it provides no tools for rationally confirming any one of the hunches beyond a reasonable doubt.

Finally, we address the government's warning that a reversal on sufficiency grounds will thwart future prosecutions for possession of child pornography. As demonstrated by Lowe, our ruling does not make new law. Rather, we simply recognize that Congress criminalized only the knowing possession of child pornography, and a conviction under that law -- like any other conviction -- cannot be based on mere guesswork. "[A] society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is

- 13 -

reasonable doubt about his guilt."  In re Winship, 397 U.S. 358, 363–64 (1970).  If Pothier is factually innocent, then he has suffered a great wrong and the guilty person remains free. Conversely, if Pothier is factually guilty, he goes free only because the prosecution failed to gather and present readily accessible evidence.  In either event, it is uncharacteristic prosecutorial torpor -- not undue judicial rigor -- that prevented justice from being done.

## III.

Having concluded that Pothier's conviction rests on insufficient evidence, we need not reach his sentencing challenge. For the reasons discussed above, we reverse.