# United States Court of Appeals
## For the First Circuit

No. 19-2209

UNITED STATES OF AMERICA,

Appellant,

v.

EDDIE GUERRERO-NARVÁEZ and KEYVAN CARTAGENA-SUAREZ,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Thompson and Lipez, Circuit Judges,
and Laplante,[*] District Judge.

John M. Pellettieri, with whom W. Stephen Muldrow, United
States Attorney, Mariana E. Bauzá-Almonte and David T. Hanek,
Assistant United States Attorneys, Brian A. Benczkowski, Assistant
Attorney General, David P. Burns, Acting Assistant Attorney
General, Robert A. Zink, Acting Deputy Assistant Attorney General,
and Kirby A. Heller, Criminal Division, Appellate Section, U.S.
Department of Justice, were on brief, for appellant.

Alejandra Bird López, Research and Writing Specialist, with
whom Eric Alexander Vos, Federal Public Defender, and Franco L.
Pérez-Redondo, Assistant Federal Public Defender, were on brief,
for appellee Eddie Guerrero-Narváez.

---

[*] Of the District of New Hampshire, sitting by designation.

Wilfredo Ríos Méndez for appellee Keyvan Cartagena-Suarez.

————————————

March 16, 2022

————————————

**LIPEZ**, **Circuit Judge**. A jury convicted Eddie Guerrero-Narváez and Keyvan Cartagena-Suarez of aiding and abetting each other in the commission of a carjacking in violation of 18 U.S.C. §§ 2 and 2119. Guerrero-Narváez and Cartagena-Suarez then filed separate post-verdict motions for judgment of acquittal. Guerrero-Narváez argued that the government's evidence was insufficient to support the jury's conclusion that he possessed the requisite specific intent to violate the federal carjacking statute. The district court agreed, granting Guerrero-Narváez's motion and explaining that no reasonable trier of fact could find from the evidence presented at trial that Guerrero-Narváez possessed the intent to seriously harm or kill, if necessary, at the time he took the car. See 18 U.S.C. § 2119. With Guerrero-Narváez acquitted, the court granted Cartagena-Suarez's motion, too.[1] The government appeals from the district court's orders granting the motions for acquittal. We affirm.

---

[1] Surveillance video and witness testimony indicated that Cartagena-Suarez was present at the gas station before and after the taking of the vehicle, but that Guerrero-Narváez took possession of the car by himself. Intent "at the moment the defendant demanded or took control over" the car is an element of the federal crime of carjacking. United States v. Díaz-Rosado, 857 F.3d 116, 121 (1st Cir. 2017) (quoting Holloway v. United States, 526 U.S. 1, 12 (1999)). If Guerrero-Narváez did not possess the requisite intent at the moment he took possession of the car, there was no federal carjacking crime. Hence, there was no basis for finding Cartagena-Suarez guilty as an aider and abettor. See Rosemond v. United States, 572 U.S. 65, 71 (2014) (recognizing that, for aiding and abetting liability to attach, someone must commit the underlying crime). The government makes

## A. Factual Background

We recount the facts in the light most favorable to the verdict. United States v. Mubayyid, 658 F.3d 35, 41 (1st Cir. 2011). On January 3, 2018, Keysha Silva-Rivera parked her silver BMW SUV adjacent to a gas pump at a Puma gas station in Carolina, Puerto Rico.[2] Silva-Rivera's two children were in the backseat. As Silva-Rivera began to exit her vehicle, Guerrero-Narváez approached her. Guerrero-Narváez, who is five feet, nine inches tall and weighs over two-hundred pounds, is significantly larger than Silva-Rivera, who is just under five feet tall. Guerrero-Narváez was dressed in a red T-shirt and red shorts, and Silva-Rivera testified that she thought he was going to "offer [her] to serve gas." Silva-Rivera remained partially within the vehicle -- with one foot inside and one foot on the ground -- while Guerrero-Narváez spoke to her for about twenty seconds from a distance of two to three feet.

Silva-Rivera testified that Guerrero-Narváez told her that he "was sent" to "take the vehicle from [her]." She "thought

no argument that there would be any basis for finding Cartagena-Suarez guilty of aiding and abetting a carjacking independently of Guerrero-Narváez's culpability.

[2] In addition to witness testimony, the government introduced into evidence the recorded surveillance camera video, which we have viewed as part of the record in this case.

it was a prank" at first and asked if the taking "had something to do with the owner of the vehicle." Guerrero-Narváez said that "if [she] cooperate[d], he [was not] going to harm either [her] or [her] children." Silva-Rivera testified that Guerrero-Narváez touched his shirt in a "sort of intimidating" manner as he spoke to her. Silva-Rivera understood the gesture to indicate that Guerrero-Narváez was armed, although Guerrero-Narváez never showed her a gun or any weapon.

Silva-Rivera asked Guerrero-Narváez if he would allow her children to get out of the car, and he agreed to do so. Silva-Rivera stepped out of the car and Guerrero-Narváez stepped back, leaving enough space for Silva-Rivera to move past him unimpeded. Guerrero-Narváez remained standing by the driver's door as Silva-Rivera walked to the back door on that side of the car. Silva-Rivera opened the door to let her two children exit the SUV, and the three of them walked to the back of the car. Silva-Rivera opened the trunk. After a few seconds, Guerrero-Narváez also walked to the back of the car and stood at the left edge of the trunk with his hand resting on the now-uplifted hatch. Guerrero-Narváez and Silva-Rivera conversed periodically throughout this time.

As Silva-Rivera removed items from the trunk of the car, Guerrero-Narváez neither rushed nor threatened her. At one point, Guerrero-Narváez reached into the trunk and handed Silva-Rivera an

umbrella. He then assisted her with retrieving another item. After she removed items from the trunk, Silva-Rivera walked along the non-driver side of the car to the front door to "check that [she] didn't leave anything." Silva-Rivera's two children remained standing at the back of the car, next to Guerrero-Narváez. While Silva-Rivera was rummaging in the front passenger compartment, Guerrero-Narváez returned to the front of the car and climbed into the driver's seat. He asked Silva-Rivera "how to push the seat back." Silva-Rivera finished rummaging in the car after Guerrero-Narváez got into the vehicle. Silva-Rivera walked to the back of the car and attempted to close the hatch, but Guerrero-Narváez began to drive away before she could close it. Silva-Rivera and her children remained standing near the gas pump while Guerrero-Narváez, driving the silver SUV, exited the gas station.

After Guerrero-Narváez left, Silva-Rivera -- still standing near the gas pump with her children -- called her husband. She then called her mechanic, who was the prior owner of the BMW, and asked him to look out for the stolen vehicle. About five minutes after Guerrero-Narváez drove off in the car, Silva-Rivera and her children entered the store of the gas station. She called the police about twenty minutes after Guerrero-Narváez took the

car,[3] telling the 911 operator that "an individual held me up with the children and took my SUV." She reported that the individual "stood at the door" and said "You have to get out with the children." The 911 operator asked if the individual had a weapon, to which Silva-Rivera replied:

> No. No. No. He had -- he said it was supposedly an order that they gave him. But they tell me here at the gas station that he's been going around for a while already, asking people for money. That they supposedly gave him an order that he has to take the SUV. That's what he told me. I stayed calm. I didn't want to argue . . . . Because I have two minors in the backseat.

Silva-Rivera did not see Cartagena-Suarez during the incident, but surveillance camera footage shows Cartagena-Suarez and Guerrero-Narváez loitering at the gas station over an hour before the carjacking and interacting in the minutes preceding the incident. When Silva-Rivera called her mechanic after Guerrero-Narváez drove away in her car, she described the appearance of the man who stole the car. The mechanic subsequently observed the BMW drive by with its hatch open and two men inside, including a man who matched Silva-Rivera's description of the car thief and a second "short and thin" man in the passenger seat. Silva-Rivera learned of the second man prior to calling 911, and she informed

---

[3] Silva-Rivera testified that she waited so long to call the police "[b]ecause I knew they weren't going to come fast." Silva-Rivera waited at the gas station for approximately 40 minutes but the police never arrived.

the dispatcher that her car was being driven by two men.  Later that evening, the mechanic observed the short and thin man driving the stolen BMW.  Cartagena-Suarez's driver's license was found inside the vehicle when it was recovered.

## B. Procedural History

A superseding indictment charged both appellants with "aiding and abetting each other" in the commission of a carjacking in violation of 18 U.S.C. § 2119.  At the close of the government's case at trial,[4] appellees each moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29.  The court took the motions under advisement, and the jury subsequently convicted appellees of aiding and abetting a carjacking in violation of 18 U.S.C. §§ 2 and 2119.  Appellees renewed their Rule 29 motions, which the court denied.  After appellees submitted written motions for judgment of acquittal, however, the court granted Guerrero-Narváez's motion.  The court then issued an order finding Cartagena-Suarez's motion "moot" in light of the relief granted to Guerrero-Narváez but granting Cartagena-Suarez's motion "[n]otwithstanding."  The court entered a judgment of acquittal for both Guerrero-Narváez and Cartagena-Suarez.

In a thoughtful opinion, the district court explained that the evidence at trial was insufficient to prove beyond a

---

[4] Appellees did not present any evidence.

reasonable doubt that Guerrero-Narváez possessed the specific intent required by the statute. United States v. Guerrero-Narvaez, 415 F. Supp. 3d 281, 288-94 (D.P.R. 2019). The government had argued in response to Guerrero-Narváez and Cartagena-Suarez's motions that, in the absence of a weapon or evidence of force,[5] Guerrero-Narváez's specific intent could be inferred from five facts "proven" at trial: Guerrero-Narváez's size relative to Silva-Rivera's; the fact that Guerrero-Narváez -- not the smaller Cartagena-Suarez -- committed the taking of the vehicle; Guerrero-Narváez's arrival on foot; Guerrero-Narváez's constant "following" of Silva-Rivera during the taking; and the nature of Guerrero-Narváez's threat. After reviewing the gas station surveillance camera footage, Silva-Rivera's trial testimony, and an audiotape of Silva-Rivera's 911 call, the district court analyzed each of the factors cited by the government and concluded that they did "not comport with any case in which § 2119's intent element has been satisfied." Guerrero-Narvaez, 415 F. Supp. 3d at 293. We summarize the court's analysis.

---

[5] Silva-Rivera did not observe a weapon and no weapon was recovered from the car or Guerrero-Narváez's person. In the absence of direct evidence of a weapon, however, the government now argues on appeal that it was reasonable for the jury to infer that Guerrero-Narváez nevertheless possessed a weapon at the time of the taking. This argument, and the significance of possession of a weapon during a carjacking, are discussed infra.

### 1. Guerrero-Narváez's Size

The court rejected the government's argument that the fact that "Guerrero[-Narváez] is a large individual, in fact much larger than Silva[-Rivera], . . . by itself ([]or in conjunction with the other factors the government proposes) indicate[s] that he intended to seriously harm or kill her." Id. at 291.

### 2. Guerrero-Narváez rather than Cartagena

The district court likewise found that "a reasonable factfinder cannot conclude that choosing to send a larger individual" -- in this case, Guerrero-Narváez rather than his smaller codefendant -- "sufficiently proves, beyond a reasonable doubt, the conditional intent to seriously harm or kill the victim." Id.

### 3. Arrival on Foot

The court concluded that "the fact that Guerrero[-Narváez] arrived on foot sufficiently establishes just one thing: he did not have a car before taking Silva[-Rivera]'s." Id. The court rejected as "impermissible speculation" the government's suggestion that Guerrero-Narváez's intent could be inferred from the proposition that he "would need a car to flee and would be unable to abandon the carjacking without the use of force." Id.

### 4. Following Silva-Rivera Closely

The court characterized "the government's proposition that Guerrero[-Narváez] followed Silva[-Rivera] around the vehicle

and kept her close at <u>all</u> times" as "false," noting that "the evidence conclusively demonstrates [from the security camera video] that Guerrero[-Narváez] neither followed Silva[-Rivera] around the vehicle nor kept in constant physical proximity to her throughout the taking."  <u>Id.</u> at 291-92.

### 5.   Nature of Guerrero-Narváez's Threat

Finally, the district court rejected the government's reliance on the manner and content of Guerrero-Narváez's threat to Silva-Rivera.  The court explained that "the fact that Guerrero[-Narváez] touched his t-shirt in a manner that signaled he was armed weighs against an inference that he intended to use brute force to harm or kill Silva[-Rivera], if necessary to take the vehicle." <u>Id.</u> at 292.  "Had Guerrero[-Narváez] intended to use brute force," the court reasoned, "he would have framed his threat in that fashion. But, instead, Guerrero[-Narváez] relied on faking he had a gun to obtain Silva[-Rivera]'s compliance.  That is a textbook bluff."  <u>Id.</u> (emphasis omitted).  The court concluded:

> The evidence presented at trial tells the story of an unarmed defendant who takes a victim's vehicle after delivering an empty threat and bluffing he is carrying a weapon. . . . The evidence here is not sufficient for a reasonable factfinder to conclude that Guerrero[-Narváez] possessed the requisite <u>mens</u> <u>rea</u>. As such, Guerrero[-Narváez]'s Rule 29 motion must be granted.

<u>Id.</u> at 293.  The government appealed.

- 11 -

**II.**

## A. Standard of Review

We review de novo a district court's order granting a post-verdict motion for judgment of acquittal. Mubayyid, 658 F.3d at 47. We will uphold the judgment "only if the evidence, viewed in the light most favorable to the government, could not have persuaded any trier of fact of the defendants' guilt beyond a reasonable doubt." Id. In other words, we must reverse the acquittal and let the guilty verdict stand if the verdict "finds support in a plausible rendition of the record." Id. (quoting United States v. Rivera Rangel, 396 F.3d 476, 482 (1st Cir. 2005)). However, we need not credit "unreasonable, insupportable, or overly speculative" interpretations of the evidence. United States v. Pothier, 919 F.3d 143, 146 (1st Cir. 2019) (quoting Leftwich v. Maloney, 532 F.3d 20, 23 (1st Cir. 2008)).

We consider the evidence "in its totality," meaning that "[i]ndividual pieces of evidence that might not be enough on their own . . . might add up to tell th[e] tale" of a defendant's guilt beyond a reasonable doubt. United States v. Guzman-Ortiz, 975 F.3d 43, 54 (1st Cir. 2020). But, just as "a judge may not pursue a 'divide and conquer' strategy in considering whether the circumstantial evidence [] adds up . . ., neither may a judge 'stack inference upon inference in order to uphold the jury's verdict.'" Id. at 55 (quoting United States v. Valerio, 48 F.3d

- 12 -

58, 64 (1st Cir. 1995)).  "[I]f the evidence, when viewed in the light most favorable to the government, 'gives equal or nearly equal circumstantial support' to theories of guilt and innocence, the convictions must be reversed."  United States v. Martin, 228 F.3d 1, 10 (1st Cir. 2000) (quoting United States v. Andújar, 49 F.3d 16, 20 (1st Cir. 1995)).

## B. The Federal Carjacking Statute

The federal carjacking statute punishes "[w]hoever, with the intent to cause death or serious bodily harm[,] takes a motor vehicle . . . from the person or presence of another by force and violence or by intimidation, or attempts to do so."  18 U.S.C. § 2119 (emphasis added).  Like much of federal criminal law, Congress enacted the carjacking statute pursuant to its authority under the Commerce Clause.  See United States v. Comstock, 560 U.S. 126, 136 (2010) (describing the sources of congressional authority to make federal criminal law); Torres v. Lynch, 578 U.S. 452, 457 (2016) (identifying an interstate commerce nexus as a common jurisdictional hook in federal criminal law); 18 U.S.C. § 2119 (limiting the statute's application to vehicles involved in interstate or foreign commerce).

Although Congress's authority to regulate interstate commerce is broad, United States v. Lopez, 514 U.S. 549, 558-59 (1995), it may not "regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate

- 13 -

commerce," United States v. Morrison, 529 U.S. 598, 617 (2000). Instead, so as not to infringe on the states' police power -- the "broad authority to enact legislation for the public good" that is reserved to the states, Bond v. United States, 572 U.S. 844, 854 (2014) -- the Constitution requires that federal criminal law distinguish between conduct that "is truly national and what is truly local." Morrison, 529 U.S. at 617; see also id. at 618 ("[W]e can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.").

In its decisions policing the boundary between federal and state criminal law, the Supreme Court has cautioned that "'unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance' in the prosecution of crimes." Jones v. United States, 529 U.S. 848, 858 (2000) (quoting United States v. Bass, 404 U.S. 336, 349 (1971)); accord Bond, 572 U.S. at 860. The Court has stringently construed the mens rea requirement of federal criminal statutes to ensure that expansive interpretations of those statutes' intent provisions do not "transform relatively minor state offenses into federal felonies." Rewis v. United States, 401 U.S. 808, 812 (1971); see also Fowler v. United States, 563 U.S. 668, 684 (2011) (Scalia, J., concurring) (cautioning against construing a federal

- 14 -

statute's mens rea requirement in a way that would "federalize crimes" that lack a federal nexus).

The federal carjacking statute reflects congressional intent to target "a particular type of robbery" with the goal of deterring especially violent crime. Holloway v. United States, 526 U.S. 1, 8-9 (1999); United States v. Rosario-Díaz, 202 F.3d 54, 63 (1st Cir. 2000) (describing congressional intent to narrowly define § 2119's mens rea element). To ensure that federal jurisdiction does not extend "beyond the point envisioned by Congress and intrud[e] into realms specifically left to" the states and territories, the mens rea element is narrow in two respects. United States v. Díaz-Rosado, 857 F.3d 116, 125 (1st Cir. 2017) (Torruella, J., concurring).

First, by requiring that a defendant specifically intend to cause serious bodily harm or death,[6] the federal statute criminalizes vehicle theft only where the risk of violence is real. Holloway, 526 U.S. at 11 ("While an empty threat, or intimidating bluff, would be sufficient to satisfy the [force or intimidation] element, such conduct, standing on its own, is not enough to satisfy § 2119's specific intent element."); see also Rosario-

---

[6] The Supreme Court has held that this specific intent encompasses both unconditional and conditional intent "at the moment the defendant demanded or took control over" the vehicle. Holloway, 526 U.S. at 11-12. In other words, the government must prove that a defendant "possessed the intent to seriously harm or kill the driver if necessary to steal the car." Id. at 12.

Díaz, 202 F.3d at 63 (citing Holloway, 526 U.S. at 1). State and territorial governments retain the authority to criminalize nonviolent car theft.

Second, mere intent to harm is not enough to bring a car theft within the reach of federal criminal enforcement. By requiring intent to cause at least "serious bodily harm," the statute ensures that federal prosecutorial authority extends only to those car thefts where a defendant possessed particularly violent intent. See Díaz-Rosado, 857 F.3d at 126 (Torruella, J., concurring) (suggesting that the level of harm contemplated by the statute involves extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of bodily function).

We have held that touching or threatening a victim while brandishing a firearm is sufficient evidence of intent "to cause death or serious bodily harm" within the meaning of § 2119. E.g., United States v. Catalán-Roman, 585 F.3d 453, 474 (1st Cir. 2009); see also Díaz-Rosado, 857 F.3d at 126 (Torruella, J., concurring) (citing cases). Other circuits have reached the same conclusion. See, e.g., United States v. Felder, 993 F.3d 57, 68 (2d Cir. 2021); United States v. Lake, 150 F.3d 269, 272 (3d Cir. 1998); United States v. Small, 944 F.3d 490, 499-500 (4th Cir. 2019); United States v. Adams, 265 F.3d 420, 425 (6th Cir. 2001); United States v. Wright, 993 F.3d 1054, 1065 (8th Cir. 2021); United States v.

- 16 -

Vallejos, 421 F.3d 1119, 1123-24 (10th Cir. 2005). But proof of intent to cause serious bodily harm or death does not require proof of the involvement of a weapon. Díaz-Rosado, 857 F.3d at 121; United States v. Rodríguez-Berríos, 573 F.3d 55, 66-67 (1st Cir. 2009). "Just as one can use brute force or a variety of items to kill or cause serious harm, one can also use such force or items to manifest an intent to cause death or serious harm if necessary." Díaz-Rosado, 857 F.3d at 121.

Generally, the key fact distinguishing a situation in which a defendant possesses the requisite specific intent from a situation in which a defendant merely makes an "empty threat," Holloway, 526 U.S. at 11, is the defendant's actual and willing use of force in carrying out the carjacking. E.g., Díaz-Rosado, 857 F.3d at 121; Rodríguez-Berríos, 573 F.3d at 66-67. Even "plac[ing] a 'cold and hard' item to [a victim's] neck" -- behavior that the victim likely would interpret as a threat involving a weapon -- and "sa[ying] '[d]rive, drive, drive, drive'" has been held insufficient to establish § 2119's requisite intent, absent evidence that the defendant actually had a weapon or threatened to harm the victim. United States v. Bailey, 819 F.3d 92, 97 (4th Cir. 2016) (third alteration in original).[7]

---

[7] The district court relied on Bailey to conclude that Guerrero-Narváez's threat was "a textbook bluff." Guerrero-Narvaez, 415 F. Supp. 3d at 292. Bailey appears to be the only reported case in which a court has vacated a conviction under

## C. Application

To establish § 2119's intent element, the government had to prove that Guerrero-Narváez "would have at least attempted to seriously harm or kill . . . if that action had been necessary to complete the taking of the car." Holloway, 526 U.S. at 12. At trial, the government bore the burdens of persuasion and production on the intent element of the crimes. See Pothier, 919 F.3d at 148; see also Jackson v. Virginia, 443 U.S. 307, 316 (1979) ("[N]o person shall be made to suffer the onus of a criminal conviction except upon sufficient proof -- defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."). We consider the totality of evidence on which the government relies to determine whether -- as the government argues -- it was reasonable for the jury to infer beyond a reasonable doubt that Guerrero-Narváez possessed the necessary intent.

On appeal, the government argues that "a reasonable juror could rely on Guerrero[-Narváez]'s threatening words alone to conclude that he acted with the requisite intent."[8] According

§ 2119 because the evidence presented at trial was insufficient to establish the requisite specific intent. The district court initially denied Bailey's motion for acquittal. On appeal, the Fourth Circuit vacated the conviction and remanded for entry of judgment of acquittal. See 819 F.3d at 94, 98.

[8] As noted, Guerrero-Narváez told Silva-Rivera that he had been "sent" to "take the vehicle from [her]" and that "if [she] cooperate[d], he [was] not going to harm either [her] or her

- 18 -

to the government, "[t]he 'or else' in that threat, while implicit, was clear." But this rationale ignores Holloway's admonition that an empty threat or intimidating bluff, standing on its own, cannot satisfy § 2119's intent requirement. See Holloway, 526 U.S. at 11. Accepting the government's argument would collapse Holloway's distinction between an empty threat and a credible manifestation of intent to harm. This is exactly the type of conflation Congress sought to avoid by imposing the stringent mens rea requirement. See id. at 11-12. Because an empty threat does not satisfy this requirement, it was necessary for the district court to consider Guerrero-Narváez's words in conjunction with his "'visible conduct and what the victim might reasonably conclude'" from that conduct "[t]o determine whether [Guerrero-Narváez's] threat [wa]s empty, or [whether] the defendant in fact intended to follow through (if necessary)." Guerrero-Narvaez, 415 F. Supp. 3d at 292 (quoting Ovalles v. United States, 905 F.3d 1300, 1303 (11th Cir. 2018)).[9]

In assessing Guerrero-Narváez's conduct during and after his initial confrontation with Silva-Rivera, the district court

---

children." When Guerrero-Narváez threatened Silva-Rivera, he touched his shirt in a "sort of intimidating" manner, which Silva-Rivera interpreted as an indication that Guerrero-Narváez was armed.

[9] We note that, although our review is de novo, we may properly reference the district court's analysis when we think it is on the mark. See Doe v. Brown Univ., 943 F.3d 61, 70 (1st Cir. 2019).

focused, in part, on what it described as the absence of a weapon. Possession (or lack) of a weapon is significant because, as the court observed, proving intent under § 2119 "is a cut-and-dried endeavor [where] the defendant utilized a loaded firearm to take the vehicle" or "carried, brandished[,] or used a weapon such as a knife or a baseball bat." Guerrero-Narvaez, 415 F. Supp. 3d at 288 (citing cases).

Recognizing the import of evidence of a weapon, the government argues for the first time on appeal that it would have been reasonable for the jury to infer that Guerrero-Narváez was carrying a weapon when he threatened Silva-Rivera and gestured to his shirt.[10] This inference, in turn, would support a conclusion that he possessed the requisite intent at the time of the taking on that basis alone. The fact that Guerrero-Narváez was not carrying that weapon when he was arrested later in the day does not undermine this theory, according to the government, because Guerrero-Narváez could have discarded the weapon by then.

But the evidence here is, at best, ambiguous as to the presence of a weapon. True, when Guerrero-Narváez first confronted

---

[10] During the trial, the government did not present evidence or argue that Guerrero-Narváez had a weapon. In its opening statement, the government informed the members of the jury that they would not "see either of these two men pulling out a gun or throwing the victim to the ground." And, in its closing argument, the government asked rhetorically, "how would this man inflict injury upon that woman if he didn't have a gun, if he didn't have a knife?"

Silva-Rivera and gestured at his shirt while threatening harm, she understood that gesture as an indication that Guerrero-Narváez carried a weapon. However, after her brief interaction with Guerrero-Narváez as she took her children out of the car and removed personal possessions from it, and shortly after Guerrero-Narváez drove off in her car, Silva-Rivera repeatedly answered "No, no, no" when the 911 operator asked her if he had a weapon. Throughout the entire interaction, Silva-Rivera never observed Guerrero-Narváez in possession of a weapon, and the security video discloses none. Due to the inescapable ambiguity about whether Guerrero-Narváez had a weapon, this case lacks the sort of categorical indication of intent to seriously harm or kill that we have often observed in other cases when a weapon is present. See, e.g., Díaz-Rosado, 857 F.3d at 126 (Torruella, J., concurring) (citing cases); Catalán-Roman, 585 F.3d at 474.

However, as our case law makes clear, even though using a weapon to effect a carjacking may be sufficient alone to establish § 2119's specific intent, neither the statute nor common sense "require[] the presence of such an item." Díaz-Rosado, 857 F.3d at 121. The ambiguity about whether Guerrero-Narváez had a weapon is simply one of many factors we consider in addressing the dispositive inquiry here: whether the evidence, taken as whole and viewed in the light most favorable to the jury's verdict, permits a reasonable factfinder to conclude beyond a reasonable doubt that

Guerrero-Narváez possessed the requisite intent to seriously harm or kill, if necessary to take the car, and was not instead making a mere empty threat when he confronted Silva-Rivera.

We have previously addressed how the government can prove § 2119's demanding mens rea element absent evidence of a weapon. In Rodríguez-Berríos, we held that evidence that the defendant struck the victim in her car immediately before she and her car disappeared, combined with evidence of the defendant's prior abuse of and stated desire to harm the victim, was sufficient to establish the defendant's intent to kill or cause serious bodily harm to the victim at the time of the carjacking. 573 F.3d 55, 66-67 (1st Cir. 2009). And we determined in Díaz-Rosado that a defendant's "initiat[ion of] the heist in circumstances where it was virtually certain that violence would be necessary," and the use of force at "each juncture" of the carjacking -- including grabbing, shoving, struggling with, and ultimately throwing a grandmother to the ground -- was sufficient evidence that the defendant intended to seriously harm or kill the victim if necessary to take the car. 857 F.3d at 121-22. Yet we described Díaz-Rosado as "close" because of the demanding standard of intent required by § 2119. See id. at 121-22; see also id. at 126 (Torruella, J., concurring) ("This level of harm contemplated by the statute is significant, and requires more than simply injuring or threatening to injure the victim."). As the district court

- 22 -

observed, "[t]he case now before the Court stands in stark contrast" to these cases. Guerrero-Narvaez, 415 F. Supp. 3d at 290. Whereas other § 2119 cases have involved unambiguous evidence of a weapon or "some degree of forceful physical contact," the district court correctly found it "crucial to the inquiry at hand" that "Guerrero[-Narváez] did not use violence or employ force against Silva[-Rivera]" or even "touch her at all." Id. Nor was this a circumstance where it was virtually certain that violence would be necessary to take the car.

The government paradoxically argues that the lack of force nevertheless supports the jury's conclusion that Guerrero-Narváez possessed the necessary intent. According to the government, Silva-Rivera's quick acquiescence to Guerrero-Narváez's demand for her car reflects her "reasonable belief that Guerrero-Narváez would harm her and her children if she resisted." Because Silva-Rivera's feelings of fear and intimidation obviated the need for Guerrero-Narváez to use force, the government suggests that the lack of force -- combined with Guerrero-Narváez's size, threatening words, and allusion to a weapon -- are sufficient to establish that Guerrero-Narváez possessed the conditional specific intent required by § 2119. In other words, the government suggests that, at the moment he confronted Silva-Rivera, Guerrero-Narváez intended to cause serious bodily harm or death if necessary to

take the car but the circumstances of his approach, and Silva-Rivera's quick capitulation, made his resort to force unnecessary.

The district court properly rejected this argument. Although it acknowledged that "a victim's perception is usually instructive as to a perpetrator's intent," the court noted that Silva-Rivera's fear did not change its analysis of the other factors to which the government pointed as evidence of Guerrero-Narváez's specific intent. Guerrero-Narvaez, 415 F. Supp. 3d at 292-93; see also Bailey, 819 F.3d at 98 n.4 (cautioning against "focus[ing] unduly on [the victim']s understandable fear and apprehension that he would be killed," as "virtually any robbery victim . . . will be intimidated and frightened"). As the district court explained:

> An empty threat delivered in a convincing manner will typically instill fear in its recipient. Still, the recipient's distress does nothing to transform the threat itself. . . . [A]n empty threat's success in achieving its intended purpose -- scaring the recipient into compliance -- does not suddenly imbue its issuer with an actual intent to injure, maim or kill. Put simply, an empty threat is empty for a reason.

Guerrero-Narvaez, 415 F. Supp. 3d at 293.

The government argues that Guerrero-Narváez's "size and heft" -- though "not evidence by itself of Guerrero[-Narváez]'s mental state" -- "at minimum supported the inference that Guerrero[-Narváez] would have been able to seriously harm

Silva[-Rivera] if necessary." But an individual's capacity to do harm tells us nothing about his intention to cause harm at that particular time. We agree with the district court that a theory relying on capacity as evidence of intention is not only off the mark, but it also improperly presumes capacity based simply on observations about the defendant's physical form. Like the district court, we "refuse[] to criminalize a defendant's heft and tall stature. An argument to that effect is no more than an off-the-cuff, desperate Hail Mary attempt," Guerrero-Narvaez, 415 F. Supp. 3d at 291, at best, and -- at worst -- a step away from more invidious propositions.

The district court acknowledged that Guerrero-Narváez's size and the fact that he "cornered Silva[-Rivera] at the front door and temporarily blocked her from exiting the SUV" made his threat to Silva-Rivera more credible. Id. at 292. "But," the court emphasized, "he did not touch or physically restrain her, nor did he apply even a modicum of force." Id. (emphasis omitted). Rather, Guerrero-Narváez stayed out of the way while Silva-Rivera escorted her children from the car and retrieved her belongings from both the trunk and the front passenger compartment. Contrary to the government's assertion that Guerrero-Narváez closely followed Silva-Rivera around the car, he assisted her in retrieving her possessions from the car. As the district court observed, "Guerrero[-Narvaez]'s conduct does not evince a willingness to use

- 25 -

his size for anything other than posturing in a menacing way." Id.

As noted earlier, in concluding that Guerrero-Narváez's threat was empty, the court found it significant that "Guerrero[-Narváez] touched his t-shirt in a manner that signaled he was armed" and "relied on faking he had a gun to obtain Silva[-Rivera]'s compliance," rather than "fram[ing] his threat in [a] fashion" suggesting an "inten[t] to use brute force." Id. (emphasis omitted).[11] He did not, for example, say that he was armed when he made the "intimidating" gesture. Although the government argues that Guerrero-Narváez's threat contained a clear, implicit "or else," the district court explained that Guerrero-Narváez's behavior "weighs against an inference that he intended to use brute force to harm or kill Silva[-Rivera], if necessary to take the vehicle." Id. (emphasis added). "Had Guerrero[-Narváez] intended to use brute force," the court reasoned, "he would have framed his threat in that fashion." Id.

The government argues that the district court's analysis of Guerrero-Narváez's gesture and threat was incompatible with its obligation to construe the evidence in the light most favorable to the government. But this is a superficial criticism of the court's

---

[11] To repeat, Guerrero-Narváez told Silva-Rivera that "if [she] cooperate[d], he [was] not going to harm either [Silva] []or [her] children."

- 26 -

reasoning.  The district court was aware that § 2119 requires more than just intent to harm.  See 18 U.S.C. § 2119 (requiring "intent to cause death or serious bodily harm" (emphasis added)).  After all, our understanding of the phrase "serious bodily harm" draws meaning from the reference to "death" in the same statutory provision.  See United States v. García-Ortiz, 904 F.3d 102, 107 (1st Cir. 2018) (invoking the canon of noscitur a sociis to discern the meaning of a phrase with reference to neighboring words).  The district court's reasoning reflects the conclusion that no reasonable jury could infer from Guerrero-Narváez's conduct that he intended to harm Silva-Rivera in the serious way that the statute requires.

The other facts on which the government relies do nothing to tip the balance of evidence in its favor.  The government points to Guerrero-Narváez and Cartagena-Suarez's behavior in the hours preceding the carjacking as evidence of Guerrero-Narváez's intent to use whatever force was necessary to steal the car.  The government argues that Guerrero-Narváez was highly motivated to successfully carry out the carjacking -- i.e., to leave the scene in a stolen vehicle -- because the two men had been waiting at the gas station for more than an hour, and failure would leave Guerrero-Narváez with "no ready means of escape" in the midst of individuals who just witnessed an unsuccessful carjacking.  But there is no evidentiary basis in this case for inferring an intent

to cause serious bodily harm or death from the defendants' loitering at the gas station with the motivation to steal the vehicle. The district court described this argument as "nothing short of impermissible speculation," noting that "[a] car is not a prerequisite to abandoning the scene of a botched crime -- criminals often flee on foot." Guerrero-Narvaez, 415 F. Supp. 3d at 291. Surely most carjackers are highly motivated to steal cars and have reason to wait patiently for the opportune moment to do so. Indeed, the government's evidence is equally consistent with the theory that Guerrero-Narváez and Cartagena-Suarez waited at the gas station for a victim against whom using force would be unnecessary. The government's "escape" theory, so speculative at its core, does nothing to advance the government's claim that a reasonable factfinder could conclude beyond a reasonable doubt that Guerrero-Narváez possessed the requisite intent.

The government's final argument -- that appellants chose Guerrero-Narváez, rather than the smaller Cartagena-Suarez -- to carry out the carjacking because he would "likely be more menacing to the victim, and thus more likely to succeed," id., actually undermines the government's case. "Undoubtedly," as the district court observed, "a commanding stature can amplify and lend credibility to a threat." Id. But sending a larger individual to effect a carjacking says nothing about the larger individual's

conditional intent to seriously harm or kill the victim of a carjacking. Indeed, the district court observed that, "[p]erhaps paradoxically, . . . [a] smaller carjacker may be likelier to necessitate violence to obtain a victim's compliance." Id. at 291 n.8.

## III.

To distinguish "intent to cause death or serious bodily harm" from a mere empty threat, § 2119 requires evidence of more than just intimidation. Even viewing the evidence in its totality, see Guzman-Ortiz, 975 F.3d at 54, Guerrero-Narváez's actions in this case fall far from the line we have drawn in prior cases. See Díaz-Rosado, 857 F.3d at 121-22. The ambiguity of the evidence of a weapon and the lack of evidence indicating that Guerrero-Narváez used any other type of force to achieve the taking of Silva-Rivera's vehicle, in combination with the other, equivocal evidence on which the government relies, dooms the government's case. "We would have to engage in [] impermissible inference stacking here to conclude. . . that there was proof beyond a reasonable doubt," Guzman-Ortiz, 975 F.3d at 55 (internal quotation marks omitted), that Guerrero-Narváez possessed the intent to kill or to cause serious bodily harm to Silva-Rivera, if necessary, to effect the taking. Whereas Díaz-Rosado was "close," 857 F.3d at 121, the facts of this case make it, as the district court aptly noted, "a ten-mile long shot" even considering the

deferential standard owed to jury verdicts. Guerrero-Narvaez, 415 F. Supp. 3d at 291. At best, viewing the evidence in the light most favorable to the government "gives equal or nearly equal circumstantial support to theories of guilt and innocence." Martin, 228 F.3d at 10 (quoting Andújar, 49 F.3d at 20). That is not good enough to meet the government's burden to prove its case beyond a reasonable doubt.

We emphasize, however, that our decision to affirm the decision of the district court does not mean that appellees did not commit a serious criminal act. Guerrero-Narváez intimidated Silva-Rivera into relinquishing her vehicle in particularly frightening circumstances, given that her children were in the backseat of the car. That crime is certainly worthy of prosecution, even if the evidence does not support conviction under the federal carjacking statute. See P.R. Laws Ann. tit. 33, § 4827 (making robbery of a motor vehicle a second-degree felony). As the district court observed:

> The record before the Court reflects that Guerrero-Narváez is a criminal who should reap what he has sowed. But, for Guerrero-Narváez to be convicted, he must be prosecuted for the right crime, and all elements of that crime must be proven. As it stands, Guerrero-Narváez did not violate § 2119. His conviction pursuant to that statute cannot pass muster.

Guerrero-Narvaez, 415 F. Supp. 3d at 293. We agree.

Affirmed.